UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

FRANCIS SETH GRIFFITH

Chapter 11 Case
Case No.: 12-35826-RBR

Debtor.

_____/

## FIRST AMENDED PLAN OF REORGANIZATION

Francis Seth Griffith, as Debtor and Debtor-in-Possession in the above captioned Chapter 11 case, propose the following First Amended Plan of Reorganization (Plan or Plan of Reorganization) pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

The capitalized terms set forth below shall have the following meanings:

1.1 Administrative Claim means a Post petition Claim, whether secured or unsecured, that is entitled to priority in accordance with sections 503(b) and 507(a) (1) of the Bankruptcy Code, including, without limitation, (a) the actual, necessary costs and expenses, incurred after the Petition Date of preserving the estate and operating the business of the Debtors (such as wages, salaries, or commissions for services rendered); (1) compensation for legal or other services and reimbursement of expenses awarded pursuant to Section 330(a) or 331 of the Bankruptcy Code; and, all fees and charges assessed against the Estates pursuant to Section 1930 of Title 28 of the United States Code.

1.2 Allowed Amount means, with respect to a particular Claim; (a) if the holder

of such Claim has not filed a proof of claim as prescribed by the Court within the applicable period of limitation fixed by the Court pursuant to Bankruptcy Rule 3003, the amount, if any, of such Claim that is Listed in the Schedule of Assets and Liabilities as being not disputed, contingent, or unliquidated; (b) if the holder of such claim has duly filed a proof of claim: (i) the amount stated in such proof of claim, if no objection to such proof of claim is interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; or (ii) such amount as shall be fixed by a Final Order, if an objection is interposed within the applicable period of limitation fixed by this Plan, the Bankruptcy Code, the Bankruptcy Rules, the Court or other applicable law; (iii) with respect to an Administrative Claim, such amount as shall be fixed and allowed by a Final Order. The Allowed Amount of any Secured claim shall be fixed in accordance with Section 506 of the Bankruptcy Code based on the value of the Debtors' interest in the property which is Collateral for such Claim.

1.3 Allowed Claim means a Claim in the specified class, if any, for which an Allowed Amount has been determined. When the context so requires, Allowed Claims include Disputed Claims to the extent such Disputed Claims become allowed after the Effective Date.

1.4 (Left Blank Intentionally)

1.5 Ballot means the ballot or ballots approved by order of the Court for distribution to holders of Claims in impaired Classes in connection with the solicitation of votes to accept or reject the Plan.

1.6 Bankruptcy Code means Title II of the United States Code, 11U.S.C. Section 131 et. seq., as of the Effective Date.

1.7 <u>Bankruptcy Rule</u> means the Federal Rules of Bankruptcy Procedure and the local rules of the court (Including any applicable local rules of the United States District Court for the Southern District of Florida), as of the Effective Date.

1.8 <u>Business day</u> means any day except a Saturday, Sunday, or legal holiday as such term is defined in Bankruptcy Rule 9006(a).

1.9 (Left Blank intentionally)

1.10 <u>Claim</u> means any right to payment from the Debtors whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtors, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, mature, unmatured, disputed, secured or unsecured.

1.11 <u>Confirmation Date</u> means the date the clerk of the Court enters the Confirmation Order on the docket.

1.12 <u>Confirmation Order</u> means the order of the Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.13 (Left Blank Intentionally)

1.14 <u>Court</u> means the United States Bankruptcy Court for the Southern District of Florida, or any other bankruptcy court exercising competent jurisdiction over this reorganization case. .

1.15 <u>Debtors</u> mean Marlene Angela Bernard and Basil Mortimer Bernard, as debtors and debtors-in-possession in their Reorganization Case.

1.16 <u>Disbursing Agent</u> means the entity or entities designated by the Debtors,

with the approval of the Court (which approval may be set forth in the Confirmation Order), to make distributions pursuant to this Plan.  Nothing herein shall preclude the Reorganized Debtors from being designated as the Disbursing Agent.

1.17 <u>Disclosure Statement</u> means the Disclosure Statement that relates to this Plan as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all-appendices, exhibits, and schedules annexed thereto or referred to therein).

1.18 <u>Disputed Claim</u> means a Claim that is not an Allowed Claim if: (a) no proof of claim has been filed with the Court, or deemed so filed under applicable law or order of the Court; (b) an objection has been or may be timely filed; or (c) the Claim has been denied in whole or part by a Final Order, or granted in whole or part by a Final Order.

1.19 <u>Distribution</u> means any distribution, delivery, or issuance of Cash, notes, securities, instruments, or assets, under the Plan to any Holder of a Claim.

1.20 <u>Distribution Address</u> means the address set forth in the relevant proof of claim. If no proof of claim is filed In respect of a particular Claim, such term means the address set forth in the Debtors' Schedules.

1.21 <u>Effective Date</u> means the First Business Day which is 30 calendar days after the date the Confirmation Order is final.

1.22 <u>Executory contract</u> means any executory contract or unexpired lease, subject to Section 365 of the Bankruptcy Code, between any Debtors and any other Person or Persons, specifically excluding all of the contracts and agreements entered into pursuant to this Plan.

1.23 <u>Final Order</u> means an Order or judgment of the Court, or other court of

competent jurisdiction, as entered on the docket of such court that has not been reversed, stayed, modified, or amended, and as to which: (a) the time to appeal, seek review or rehearing, or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand, or certiorari is pending; or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought.

1.24 <u>Impaired</u> means any Claim which, under the Plan, is not treated pursuant to Bankruptcy Code section 1124(1) or (2).

1.25 <u>Person</u> means any individual, corporation, general partnership, limited partnership, association, joint stock Company, joint venture, estate, trust, unincorporated organization, government, or any political subdivision thereof or other entity.

1.26 <u>Petition Date</u> means October 29, 2012.

1.27 <u>Plan</u> means this First Amended Plan of Reorganization, dated May 10, 2013 and all exhibits hereto, together with any amendments or modifications thereof.

1.28 <u>Post petition</u> means arising or accruing after the Petition Date and before the Effective Date.

1.29 <u>Prepetition</u> means arising or accruing prior to the Petition Date.

1.30 <u>Priority Claim</u> means any Prepetition Unsecured Claim against the Debtors, other than a Priority Tax Claim, which is entitled to priority in accordance with Section 507 of the Bankruptcy Code.

1.31 <u>Priority Tax Claim</u> means a Prepetition unsecured Claim against the Debtors for Taxes owed which are entitled to priority in accordance with Section 507(a)(8) of the Bankruptcy Code.

1.32 <u>Reorganized Debtor</u> means the Debtors on and after the Effective Date.

1.33 (Left Blank Intentionally)

1.34 <u>Secured Claim</u> means a Prepetition Claim against the Debtors that is collateralized by a security interest in or lien, mortgage, or other encumbrance on, any right, title, or interest of the Debtors in and to property of the estate or that is subject to offset under Section 553 of the Bankruptcy Code, the amount of which shall be determined in accordance with Sections 506 and 1111 (b) of the Bankruptcy Code.

1.35 <u>Stipulation</u> means an agreement between the Debtors and the Holder of a Claim.

1.36 <u>Subsequently Allowed Claim</u> means any Claim for which an Allowed Amount is fixed after the Effective Date.

1.37 <u>Taxes</u> means all taxes, charges, fees, levies, imposts, or other assessments by any federal, state, local, or foreign taxing authority including without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated severance, stamp, occupation, and withholding taxes.  Such term shall include any interest, penalties, or additions attributable to, imposed on, or with respect to such assessments.

1.38 (Left Blank Intentionally)

1.39 <u>Unclaimed Property</u> means any Cash unclaimed-on or after the applicable Initial Distribution Date or date on which an Additional Annual Distribution would have been made in respect of the relevant Allowed Claim. Unclaimed Property shall include: (a) checks (and the funds represented thereby) mailed to a Distribution Address and returned as undeliverable without a property forwarding address; (b)

funds for uncashed checks; and (c) checks (and the funds represented thereby) not mailed or delivered because no Distribution Address to mail or deliver such property was available.

1.40 (Left Blank Intentionally)

1.41 <u>Unimpaired</u> means any Claim or Interest which is not impaired under the Plan.

1.42 <u>Value</u> means in respect of any property of the Debtors constituting Collateral for any Secured Claim, the value of any such property as shall be determined by the Court or by Stipulation.

1.43 <u>Voting Deadline</u> means the last day to vote to accept or reject the Plan as fixed by order of the Bankruptcy Court.

1.44 As used in the Plan, a masculine pronoun shall be deemed to include the feminine and neuter, and all terms used in the singular shall be deemed to include the plural and vice versa.

1.45 (Left Blank Intentionally)

1.46 Whenever, it appears appropriate from the context, each term state in the singular or the plural include the singular and the plural.

1.47 Any term used herein that is not defined herein shall have the meaning ascribed to any such term used in the Bankruptcy Code or the Bankruptcy Rules if use therein.

1.48 Captions and Headings to Articles and Sections of the Plan are inserted for convenience or reference only and are not intended to be a part or to affect the interpretation of the Plan.

1.49 The Rules of Construction set forth in Section 102 or the Bankruptcy

Code shall apply, unless superseded herein or in the confirmation Order.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND TREATMENT

2.1 General Rule for Classification.

The following is a designation of the Groups and Classes of Claims and the Treatment thereof under this Plan.

2.2 Classification of Claims and Interest.

**Pursuant to 11 U.S.C. §1141(d)(5) Debtor will not receive a discharge until completion of all payments under the plan. If Debtor completes all plan payments, Debtor's debts shall be discharged.**

1.      Pursuant to 11 U.S.C. § 1141(d)(5)(A), the Debtor shall be discharged from all pre-Confirmation debts except as is provided in the Plan, pursuant to the procedures set forth herein, upon completion all payments required under the Plan to Class 2 creditors. Upon the satisfaction of all payments required under the Plan to Class 2 creditors, the Reorganized Debtor shall file a Final Report of Estate and Motion for Final Decree Closing Case on the Court approved local form.

2.      Notwithstanding the above, the Debtor may request that the Court close this bankruptcy proceeding prior to the entry of an Order of Discharge, pursuant to the following procedures:

a.   The Debtor may file a Motion to Temporarily Close Bankruptcy Case Prior to Entry of Order of Discharge (the "Motion to Close") after the following events have occurred: (I) payment of the Initial Payment

(defined in the Plan) to Class 2 creditors; (ii) payment of all outstanding quarterly United States Trustee Fees as of the date of the Order approving the Motion to Temporarily Close; and (iii) the filing of all outstanding federal income tax returns. The Motion to Close shall certify that each of the above conditions have been met.

b.    The Motion to Close (and Notice of Hearing thereto) shall be served to all creditors and interested parties. The Court may grant the Motion to Close, pursuant to 11 U.S.C. § 350(a), if each of the above conditions have been met.

c.    During the time that this bankruptcy case is temporarily closed, the provisions of the confirmation order shall remain in effect with respect to the treatment of creditor claims that existed as of the bankruptcy petition date, that being October 29, 2012, as long as the Debtor continues to be in compliance  with the Plan and the Court's Order Confirming Debtor's Plan of Reorganization and Setting Bar Date for Lease and Executor Contract Rejection Claims (the "Confirmation Order"), and as long as the Debtor timely makes all of the payments to Class 2 creditors, as contemplated under the Plan.

d.    Upon the satisfaction of all payments required under the Plan to Class 2 creditors, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b). Any Clerk of Court fees

associated with filing of the motion to reopen shall be waived. The motion to reopen shall be verified and served upon all creditors and parties in interest and shall demonstrate that the Debtor has made all of the payments contemplated under the Plan to Class 2 creditors.

e.    Upon the re-opening of this bankruptcy proceeding, the Debtor shall promptly file a Final Report of Estate and Motion for Final Decree Closing Case on the Court-approved local form, which shall certify that all payments required under the Plan to Class 12 creditors have been made. The Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5).

Reservation of Rights Under Sections 1141(d)(5) and 350(a). The Debtor reserves the right, after confirmation, to seek the closing of this bankruptcy proceeding prior to the entry of an Order of Discharge, upon the payment of the initial payment under this Plan, payment of all outstanding quarterly United States Trustees Fees, and the filing of any outstanding federal income tax returns. Such a request may be granted only upon notice and hearing, with notice to all creditors and interested parties. If such request is granted, then upon the satisfaction of all payments required to be paid pursuant to the Plan to Class 2, the Debtor may file a motion to reopen this bankruptcy proceeding, pursuant to 11 U.S.C. § 350(b), and the Court may then grant the Debtor a discharge, pursuant to 11 U.S.C. § 1141(d)(5). This paragraph only preserves the Debtor's right to seek the relief described above and does not conclusively grant such relief. Creditors' and interested parties' rights to object to such relief shall similarly be preserved until such

time as it is requested by the Debtor after confirmation.

The following briefly summaries the classification and treatment of Claims under the Plan.

**Group 1 Administrative Expense Claims**

100% Payment:

Composition: All Claims allowed by the Court pursuant to 11U.S.C. Section 503 and 507(a)(1). The Debtor estimates that there will be no Administrative Expense Claim. No party has made a claim for Administrative Expenses.

Treatment: Each holder of an Allowed Administrative claim shall be paid 100% of its Allowed Claim upon the Effective Date of Confirmation of the Plan of Reorganization or as otherwise agreed between the holder of the administrative claim and the Debtors. All Fee Requests shall be filed no later than 30 days after the Confirmation Date or such other date as established by the Court.

**Unimpaired**: Administrative Expense Claims are **Unimpaired** under the Plan.

**Group 2 Priority Claims:**

2-A Priority Non-Tax Claims

100% Payment: Each Holder of an Allowed Priority Non-tax Claim shall be paid 100% of its Allowed Claim. The Debtor estimates of Priority Non-tax Claims at zero ($0.00).

Treatment: Each Holder of an Allowed Priority Non-Tax Claim shall receive, in full satisfaction of such Claim, an amount of cash equal to 100% of the amount of such claim within 15 days of the Effective Date, or within 15 days of the allowance of such Claim, by a Final Order, whichever is later, or as soon as practicable thereafter unless such Holder agrees to a different treatment of its Claim.

Priority non-tax claims are **unimpaired**.

### 2-B Priority Tax Claims

Pursuant to 11 U.S.C. §507(a)(8) governmental income taxes are chronologically given eighth priority in claim preferences. This claim preference is allowed only to the extent that:

> i)      The tax on income is for a taxable year ending on or before the date of the filing of the petition;
> ii)     The tax return is due after three years before the petition date; and
> iii)    The tax is assessed within 240 days before the date of the filing of the petition (exclusive of the time an offer in compromise in pending plus 30 days, or a stay is pending, plus 90 days).
> iv)     The tax not assessed before but assessable post-petition.

Each Holder of an Allowed Priority Tax Claim (Internal Revenue Service) shall be paid 100% of its Allowed Priority Claim. All Claims allowed by the court pursuant to 11 U.S.C. Section 507(a) (8). The Debtor estimates the amount of Priority Tax Claims at zero ($0.00).

Treatment: Each Holder of an Allowed Priority Tax Claim shall receive, in full satisfaction of such claim, at the option and sole discretion of the Debtor, either: (1) an amount in cash equal to the Allowed Amount of such claim (or any portion thereof), payable as soon as practicable after the Effective Date; or (ii) equal cash payments, paid in equal monthly payments over a period not to exceed five (5) years from the Order for Relief plus simple interest on any outstanding balance from the effective Date at the deficiency rate as determined under I.R.C. Section 6621(c) (3), as amended, for underpayments other than large corporate underpayments, as defined therein, or on such other terms as the Holder of the priority Tax Claims may

agree.  Priority Tax Claims are **unimpaired**.

**SECURED CLAIMS - CLASS 1 -**

**Class 1A Secured Claim of CitiMortgage, Inc., – 1941 S.W. 68th Way, Miramar, Florida 33023- First Mortgage**

The Debtor gave CitiMortgage Inc., a mortgage to secure the payment of the promissory note executed by Debtor. The mortgage is in first priority position on the real property located at 1941 S.W. 68th Way, Miramar, Florida 33023, the Debtor's investment property.

CitiMortgage, Inc., filed a claim in the amount of $184,166.57.  *See* Claim 5-1. Debtor filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 25.  On February 7, 2013 the Court entered on order granting Debtor's Motion to Value, DE 75.  The property has a value of $95,000.00.  On April 5, 2013 CitiMortgage, Inc., filed a Notice of Election by Class 1A Pursuant to §1111(b).  *See* DE 88.

Treatment: The parties have agreed that Debtor shall pay Citi's full allowed secured claim, without interest, over not more than 104 months as follows:

**i.)    For months 1 through 12 the payment shall be as follows:**

| | |
|---|---|
| §1111(b) Payment | $1,400.59 |
| Escrow for Taxes and Insurance | $862.44 |
| Total Monthly Payment | $2,263.03 |

**ii.)    For months 13 through 104 the payment shall be as follows:**

| | |
|---|---|
| §1111(b) Payment | $1,819.12 |
| Escrow for Taxes and Insurance | $403.08 |
| Total Monthly Payment | $2,222.20 |

Under no circumstances shall CitiMortgage be paid less than $184,166.57 for

its allowed secured claim.

The above escrow figures are estimates only. The escrow account will begin at $0.00 and the monthly escrow will begin at $862.44 based on an assumed payment start date of September 1, 2013. Within the first 12 months an escrow analysis will be performed and the monthly payment will be adjusted as needed to provide for anticipated taxes and insurance as well as a two-months reserve, and to collect any anticipated escrow shortage over a 12-month period.

Payments shall commence on the first day of the month following the month in which the confirmation order is entered.

While the automatic stay remains in effect, Debtor shall be in default under the Plan if he fails to make a Plan payment when due, or there is a default under the unmodified terms of the Note or Mortgage and he fails to cure such default within seventy-two (72) hours after CitiMortgage, Inc., or its attorney provides Debtor, Debtor's counsel or an agent of Debtor's counsel with telephonic, facsimile or e-mail Notice of Default. In such event, the Court shall grant CitiMortgage, Inc., in rem relief from stay to exercise its rights with respect to the collateral without notice or hearing provided CitiMortgage, Inc., files a proposed order together with an affidavit setting forth specific facts establishing that: (a) a default occurred; (b) CitiMortgage, Inc. (or it's attorney) provided Debtor, Debtor's counsel or an agent of Debtor's counsel with seventy-two (72) hour Notice of Default; and (c) Debtor failed to cure the default within the seventy-two (72) hour period. If Debtor default after the automatic stay is no longer in effect, the default provisions of the Note and Mortgage shall apply.

Upon entry of an order lifting the stay as provided above, or upon default after the stay has otherwise lifted, the modification of the loan as provided in the Plan shall

cease to apply and all payments made under the Plan shall be credited against the original loan as though no modification had occurred.

Except as modified above, all other terms of the Note and Mortgage shall remain in full force and effect. This claim is **partially impaired**.

**Class 1B Secured Claim of JPMorgan Chase Bank, N.A. – 9440 Johnson Street, Pembroke Pines, Florida 33024 – Second Mortgage**

The Debtor gave JPMorgan Chase Bank, N.A., a second mortgage to secure the payment of the promissory note executed by Debtor. The mortgage is in second priority position on the real property located at 9440 Johnson Street, Pembroke Pines, Florida 33024.    JPMorgan Chase Bank has a claim in the amount of $42,705.21.

Debtor filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 33.  On January 23, 2013 the Court entered on order granting Debtor's Motion to Value, DE 61.  The property has a value of $156,000.00.  Regions Bank has a first mortgage in first priority in the amount of $ 143,000.00.  Regions Bank claim is fully secured.  JPMorgan Bank's claim is secured to the extent of $13,000.00 and unsecured to the extent of $29,705.21.

Treatment: JPMorgan Chase Bank's claim is secured to the extent of $13,000.00 and unsecured to the extent of $29,705.21.  Beginning with the first payment due within 30 days of entry of the confirmation order, Debtor shall pay principal and interest payments for sixty [60] months amortized at an interest rate of 5.25% for a monthly payment of $246.82 per month.  The cram down portion of $29,705.21 shall be added to Class 2 General Unsecured Claims of any confirmed

Chapter 11 Plan and JPMorgan Chase Bank shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

**Class 1C Secured Claim of Regions Bank – 9440 Johnson Street, Pembroke Pines, Florida 33024 – First Mortgage**

The Debtor gave Regions Bank a mortgage to secure the payment of the promissory note executed by Debtor. The mortgage is in first priority position on the real property located at 9440 Johnson Street, Pembroke Pines, Florida 33024, the Debtor's investment property.

The value to the subject property is $156,000.00. Regions Bank has a secured claim in the amount of $143,000.00. Regions Bank claim is fully secured. Debtor will make mortgage payments pursuant to the terms of the mortgage and promissory note. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **unimpaired**.

**Class 1D Secured Claim of Bank of America, N.A./Specialized Loan Servicing, LLC, – 1342 S.W. Del Rio Blvd., Port Saint Lucie, Florida 34953 – First Mortgage**

The Debtor gave Bank of America, N.A., a mortgage to secure the payment of

the promissory note executed by Debtor. The mortgage is in first priority position on the real property located at 1342 S.W. Del Rio Blvd., Port Saint Lucie, Florida 34953, the Debtor's investment property.

Debtor filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 35. On January 23, 2013 the Court entered on order granting Debtor's Motion to Value, DE 62. The property has a value of $94,000.00. Bank of America's claim is secured to the extent of $94,000.00.

Treatment: Bank of America's claim is secured to the extent of $94,000.00 and unsecured to the extent of $191,005.43.00. Beginning with the first payment due within 30 days of entry of the confirmation order, Debtor shall pay principal and interest payments for one hundred twenty [120] months amortized at an interest rate of 5.25% for a monthly payment of $1,008.54 per month. The cram down portion of $191,005.43 shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and Bank of America shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.


**Class 1E Secured Claim of First Horizon Home Loans/Nation Star Mortgage, LLC – 2369 S.W. Fern Circle, Port Saint Lucie, Florida 34953 – First Mortgage**

The Debtor gave First Horizon Home Loans, a mortgage to secure the

payment of the promissory note executed by Debtor. The mortgage is in first priority position on the real property located at 2369 S.W. Fern Circle, Port Saint Lucie, Florida 34953, the Debtor's investment property.

Debtor filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 37. On January 23, 2013 the Court entered on order granting Debtor's Motion to Value, DE 63. The property has a value of $98,400.00. First Horizon Home Loan's claim is secured to the extent of $98,400.00.

Treatment: First Horizon's claim is secured to the extent of $98,400.00 and unsecured to the extent of $220,770.85. Beginning with the first payment due within 30 days of entry of the confirmation order, Debtor shall pay principal and interest payments for one hundred twenty [120] months amortized at an interest rate of 5.25% for a monthly payment of $1,055.75 per month. The cram down portion of $220,770.85 shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and First Horizon shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

**Class 1F Secured Claim of Wells Fargo/America's Servicing Company – 321 S.W. 99th Avenue, Pembroke Pines, Florida 33025 – First Mortgage**

The Debtor gave America Servicing Company, a mortgage to secure the payment of the promissory note executed by Debtor. The mortgage is in first priority position on the real property located at 321 S.W. 99th Avenue, Pembroke Pines,

Florida 33025, the Debtor's investment property.

Debtor filed a Motion to Value and Determined Secured Status of Lien on Real Property, DE 23. On March 26, 2013 the Court entered on order granting Debtor's Motion to Value, DE 82. The property has an agreed value of $170,000.00. Wells Fargo/America's Servicing Company's claim is secured to the extent of $170,000.00.

Treatment: Wells Fargo/America's Servicing Company's claim is secured to the extent of $170,000.00 and unsecured to the extent of $220,314.54. Beginning with the first payment due June 1, 2013, Debtor shall pay principal and interest payments for two hundred seventy two [272] months amortized at an interest rate of 4.85% for a monthly payment of $1,031.40 per month. There is a post petition advance in the amount of $3,051.86. Debtor shall repay the post petition advance in twelve [12] equal monthly installments in the amount of $254.32 commencing June 1, 2013. The cram down portion of $220,314.54 shall be added to Class 2 General Unsecured Claims of any confirmed Chapter 11 Plan and Wells Fargo/America's Servicing Company shall be entitled to recover its proportionate share therefrom. With respect to a class of unsecured claims, the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except the Debtors may retain property included in the estate under section 1115. This claim is **partially impaired**.

### GENERAL UNSECURED CLAIMS- CLASS 2 -

The general unsecured claims of the Debtors who have filed Proof of Claims are as follows:

| | |
|---|---|
| CitiMortgage, Inc. | $30,000.00 |
| Ocwen Loan Servicing, LLC | $35,221.00 |
| JPMorgan Chase Bank | $29,705.21 |
| Bank of America | $191,005.43 |
| First Horizon | $220,770.85 |
| America's Servicing Company | $220,314.54 |
| | ========== |
| Total | $727,017.03 |

The amount proposed to be paid to the unsecured claims is $12,000.00.

**Pursuant to 11 U.S.C. §1129(a)(15) a creditor can object to the confirmation of the Plan because the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period. Debtor has disposable income to pay unsecured claims and Debtor has elected to pay $12,000.00 which is not a substantial distribution of these claims.**

The Debtor will pay the general unsecured creditors the total sum of $12,000.00 without interest in equal monthly payments of $200.00 which will be disbursed to the general unsecured creditor pro-rata until they are paid in accordance with this Plan. The Debtor estimate it will take 60 months until these claims are paid in accordance with this Plan. Payments will begin 30 days from the Effective Date of the Plan of Reorganization. If Debtor completes all plan payments, Debtor's debts shall be discharged. This class is **impaired**.

### UNITED STATES TRUSTEE FEES

Notwithstanding any other provisions of the Plan to the contrary, the Debtor shall pay the United States Trustee the appropriate fee required pursuant to 28 U.S.C. §1930(a)(6) within ten (10) days of the entry of the order confirming the Plan for pre-confirmation periods, and Debtor shall file pre-confirmation monthly operating

reports, indicating the income and disbursements for the applicable period(s). Debtor, as Reorganized Debtor, shall further pay the United States Trustee the appropriate fee required pursuant to 28 U.S.C. §1930(a)(6), based upon all post-confirmation periods within the time period set forth in 28 U.S.C. §1930(a)(6) and all post-confirmation disbursements made by Reorganized Debtor, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the Bankruptcy Code. Reorganized Debtor shall provide to the United States Trustee upon the payment of each post-confirmation payment, and concurrently filed with the Court, Post-Confirmation Quarterly Operating Reports indicating all the cash disbursements for the relevant period, including, among other things, all payments made under the Plan and all payments made in the Ordinary Course of Business.

## ARTICLE III

3.1 <u>Funding</u>. The Cash necessary to make the Cash payments required hereunder to be made as of the Effective Date to Holders of Allowed claims will be provided from any cash generated during the Chapter 11 case and income generated by the Reorganized Debtors, except as otherwise provided herein.

3.2 <u>Retention of Property</u>. The Debtors shall retain all of their properties other than that property disposed of during the Chapter II case and disposed of pursuant to this Plan.

3.3 <u>Satisfaction of Claims</u>. All claims of creditors shall be satisfied solely in accordance with the Plan. On and after the Effective Date, the assets of the Debtors shall be free and clear of all claims of creditors arising prior to the Effective Date

except as specifically provided for in the Plan or the Confirmation Order.

   3.4 Disbursing Agent. The Reorganized Debtors or their attorneys shall act as the Disbursing Agent.

## ARTICLE IV
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

4.1 Assumption and Rejection. As of the Effective Date and effective as of the Petition Date, all executory contracts and unexpired leases of the Debtors shall be rejected by the Debtors pursuant to the provisions of Sections 365 and 1123 of the Bankruptcy Code. Any executory contract or lease assumed by the Debtors under the Plan shall be deemed assigned, to the extent necessary, to the Reorganized Debtors as of the Effective Date.

   4.2 Cure. At the election of the Debtors or the Reorganized Debtors, as the case may be, any monetary defaults under each executory contract and unexpired lease to be assumed under this Plan shall be satisfied pursuant to Section 355(b) (1) of the Bankruptcy Code, in one of the following ways: (a) by payment of the default amount in Cash on the Effective Date or (b) on such other terms as agreed to by the parties to such executory contract or unexpired lease.

## ARTICLE V
## DISTRIBUTIONS TO HOLDERS OF ALLOWED CLAIMS

   5.1    Distributions Generally.

   5.1.1. Holders Entitled. Distributions of property under the Plan shall be made only to Holders of Allowed Claims and pursuant to Section 5.1.5 hereof. Holders of Disputed Claims shall not be entitled to receive any distribution unless and until their Disputed claims shall become Allowed Claims, and then, only to the extent so

Allowed.

5.1.2. Timing. Subject to the provisions of Section 5.1.10 hereof, Distributions required to be made under this Plan shall be made either (i) on or within 5 days after the Effective Date if to be made in respect of an Allowed Claim as of such Date, or (ii) otherwise, on or prior to the first Business Day following the day 30 days after such Claim becomes an Allowed Claim by Final Order as the case may be.        -

5.1.3 Method of cash Distributions. Any Cash payment to be made pursuant to this Plan may be made by draft, check, wire transfer, or as otherwise required or provided under any relevant agreement or applicable law.

5.1.4 Distributions on Non-Business Days. Any payment or Distribution due on a day other than a Business Day shall be made, without interest, on the next Business Day.

5.1.5 No Distribution in Excess of Allowed Amount of Claim. No Holder of an Allowed claim shall receive in respect of such Claim any distribution in excess of the Allowed amount of such Claim.

5.1.6 Disputed Payments. If any dispute arises as to the identity of a Holder of an Allowed claim who is to receive any distribution, the Reorganized Debtors may, in lieu of making such Distribution to such person, make such Distribution into an escrow account until the disposition thereof shall be determined by a Final Order from the Court or by Stipulation among the interested parties to such dispute.

5.1.7 Distributions to Holders of Allowed Claims on the Effective Date. On the applicable Effective Date (initial Distribution Date), the Reorganized Debtors shall make a Distribution of Cash to: (I) each Holder of an Allowed Claim in an amount equal to its pro Rata Share of the Cash allocated to the relevant Class.

5.2.1 <u>Distributions to Holders of Subsequently Allowed Claims</u>.   Upon the resolution of the dispute in respect of such Claim whether by Final Order or otherwise, (i) to the extent that such Disputed Claim has become an Allowed Claim, distributions in respect thereof shall include a Pro Rata Share of the subsequent payments made by the Reorganized Debtors.

5.3 <u>Unclaimed Distributions</u>. Unclaimed distributions shall become property of the Reorganized Debtors within 30 days of return of the funds and without claim from any party.

**ARTICLE VI**
**DISPUTED CLAIMS**
**SUBSEQUENTLY ALLOWED ADMINISTRATIVE EXPENSES**

6.1 <u>Objections to Claims</u>.

6.1.1 <u>Time to Object</u>. Unless an earlier or later date is established by the court, all objections to Claims shall be filed with the court and served on the Holders of the Claims to which a party has an objection by the later of: (1) 120 days after the Effective Date: or (2) 60 days after a particular proof of claim is filed with the Court. If an objection to any Claim is not timely filed by the bar dates established in this paragraph, such Claim shall be treated as an Allowed Claim if such Claim has not been disallowed earlier. Any Claim which is allowed under the provisions of this Plan shall be an Allowed claim and not subject to objections by any Person, including the Debtors.

6.1.2 <u>Authority to Prosecute</u>. After the Effective Date, only the Reorganized Debtors shall have the authority to file objections, estimate claims, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims provided.

6.1.3 Amendment of Claims. A Claim may be amended before the Confirmation Date only as agreed upon by the Debtors and the Holder of such Claim or as otherwise permitted by the Court, Bankruptcy Rules, or other applicable law. After the Confirmation Date, a Claim may be amended to decrease but not increase the Face Amount thereof.

### ARTICLE VII
### EFFECT OF THE PLAN ON THE RIGHTS
### OF CREDITORS, THE DEBTORS AND OTHERS

7.1 Discharge of the Debtors.

7.1.1 Scope. Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1141(d)(5) of the Bankruptcy Code, entry of the Confirmation Order does not act as a discharge effective as of the Effective Date of all debts of Claims against liens on their assets, or properties, which debts, Claims, liens, and interests arose at any time before the entry of the Confirmation Order.

7.1.2 Revesting and Vesting. Except as otherwise provided expressly in this Plan, on the Effective Date, following the Effective Time all property comprising the Estate of the Debtors shall revest in the Reorganized Debtors and shall become property of the Reorganized Debtors free and clear of all Claims, liens, charges, encumbrances, and interests of creditors (other than expressly provided in this Plan) As of the Effective Date, the Reorganized Debtors shall operate their businesses and use, acquire and dispose of property, settle and compromise Clams without supervision of the Court free of any restrictions of the Bankruptcy Code or Bankruptcy Rues, other than those restrictions expressly imposed by the Plan and

Confirmation Order. Without limiting the foregoing, the Reorganized Debtors may pay any charges it incurs after the Effective Date for professional fees, disbursements, expenses, or related support services without any application to the Court.

7.3 Retention and Enforcement of Claims and Causes of Action.

7.3.1 Except as otherwise provided expressly in this Plan, including, without limitation, subsection (b) below, or in any contract, instrument, release or other agreement entered into in connection with the Plan or by Order of the Court, in accordance with Section 1123(b) of the Bankruptcy Code, the Reorganized Debtors shall retain and may enforce any claims, rights, and causes of action that the Debtors or Estates may hold, including without limitation, any claims, rights, or causes of action under Sections 544 through 550, inclusive, of the Bankruptcy Code or any other applicable law. Debtors may pursue any such claims, rights and causes of action in accordance with what it determines to be in its best interests.

7.3.2 As of the Effective Date, the Reorganized Debtors shall waive and release any and all avoidance actions under Bankruptcy Code Sections 544 through 550 against Holders of Secured Claims.

## ARTICLE VIII
## MODIFICATION OF THE PLAN AND CONFIRMATION OVER OBJECTION

8.1 Modification of the Plan.

8.1.1 Preconfirmation Amendment. The Debtors may amend or modify this Plan at any time prior to the Confirmation Date upon notice to those creditors whose interests may be adversely affected by such amendment or modification and with the approval of the Court. The confirmation hearing may be continued from time to time.

No notice of any such continuance will be provided other than notice at the hearing and any continued hearing to those attendance.

8.1.2 <u>Postconfirmation Amendment Not Requiring Resolicitation</u>.  After the entry of the Confirmation Order, the Debtors may modify the plan to remedy any defect or omission or to reconcile any inconsistencies in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and effects of the Plan, provided that (i) the Debtors obtain approval of the court for such modification, after notice and a hearing; and (ii) such modification shall not materially or adversely affect the interest, rights, treatment, or distributions of any Class of Allowed Claims or Allowed Interests under the Plan. Any waiver under section 9.1.4 hereof shall not be considered to be a modification of this Plan.

8.1.3    <u>Postconfirmation/Preconsummation    Amendment    Requiring Resolicitation</u>. After the Confirmation Date and before substantial consummation of the Plan, the Debtors may modify the Plan in a way that materially or adversely affects the interest, rights, treatment, or distributions of a Class of Claims, provided that (i) the Plan, as modified, meets applicable Bankruptcy Code requirements; (ii) the Debtors obtain court approval for such modification, after notice and a hearing; (iii) such modification is accepted by at least 2/3 in amount, and more than ½ in number, of Allowed Claims voting in each Class adversely affected by such modification; and (iv) the Debtors comply with Section 1125 of the Bankruptcy Code with respect to the Plan, as modified.

8.1.4 <u>Consent Required</u>. This Plan may not be altered, amended, or modified without the written consent of each of the Debtors.

8.2 <u>Request for Confirmation Over Objection</u>.  In the event any Class of

Claims votes against the Plan, the Debtors hereby request, and shall be allowed, to modify the terms of this Plan to effect a "cramdown" on such dissenting Class by (i) restructuring the terms of any Reorganization Security to be issued pursuant to the Plan on Terms consistent with Section 1129(b) (2) (A) of the Bankruptcy Code, or reallocating such distributions, until such impaired senior Classes are paid in accordance with the absolute priority rule of Section 1129(b) of the Bankruptcy Code. The Debtors may make such modifications or amendments to this Plan and such modifications or amendments shall be filed with the Court and served on all parties in interest entitled to receive notice of the hearing on the confirmation of this Plan the later of (a) at least 10 days prior to such hearing and (b) five days following the Voting Deadline. No such modifications shall require any reconciliation of acceptances as to the Plan by any Class of Claim or Interests unless the Court shall require otherwise.

## ARTICLE IX
## CONDITIONS TO EFFECTIVENESS

9.1 Conditions to Effectiveness. This Plan shall not become effective unless each of the conditions set forth below is satisfied or otherwise waived in accordance with the provisions of Section 9.2 hereof.

9.1.1 The Confirmation order shall have been entered confirming the Plan and shall have become a Final Order and consummation of the Plan shall not be precluded by any Order, stay, or injunction of a court of competent jurisdiction nor shall there be pending a suit or appeal challenging the Plan or any transaction related to consummation of the Plan, which, in the reasonable opinion of the Debtors, would have a material adverse effect of the business, properties, condition (financial

or otherwise); provided, however, that the Debtors may jointly elect to cause the Plan to become effective notwithstanding any appeal from the Confirmation Order so long as no order has been entered by a court of competent jurisdiction staying the effectiveness of the Confirmation Order.

9.1.2 All contracts and unexpired leases assumed pursuant to this Plan shall have been assured by the Debtors in accordance with Section 365 or Section 1123(b) (2) of the Bankruptcy Code.

9.1.3 All necessary consents of all entities, if any, who are parties to executory contracts or unexpired leases to be assumed pursuant to this Plan or which were entered into by the Debtors after the date of commencement of the Bankruptcy Case shall have been obtained, except to the extent that any failure to so continue would not have a material adverse effect upon the business or properties of the Debtors taken as a whole; or

9.1.4 The Allowed Amount of all Secured Claims has been determined by a Final Order or by Stipulation as set forth under Article 11 hereof.

9.2 <u>Waiver of Conditions to Confirmation and Consummation</u>.  Each of the conditions to effectiveness or consummation of this Plan or the occurrence of the Confirmation Date or the Effective Date is for the sole benefit of the Debtors. Except with respect to the conditions set forth in Section 9.1 hereof, to the extent that it requires entry of Final Order by the Bankruptcy Court, the requirement that any condition be satisfied may be waived in whole or part, by the Debtors, in their sole discretion, without notice and a hearing. The failure to satisfy or waive any condition may be asserted by the Debtors regardless of the circumstances giving rise to the failure of such condition to be satisfied (including without limitation, any act, action,

failure to act or inaction by the debtors). Any failure by the Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

## ARTICLE X
## RETENTION OF JURISDICTION

10.1 <u>Retention of Jurisdiction</u>. Notwithstanding confirmation of this Plan or occurrence of the Effective Date, the Court shall retain jurisdiction over the Reorganization Case through and after the closing of the case as to all matters, including but not limited to, those matters specifically set forth in this Article X. Prior to the entry of a final decree of the Court pursuant to Bankruptcy Rule 3022, the Court shall retain jurisdiction:

10.1.1 over all Claims against the Debtors;

10.1.2 to determine the allowability of Claims and Interests upon objection to such Claims or Interests;

10.1.3 to determine any tax liability pursuant to Section 505 of the Bankruptcy Code;

10.1.4 to adjudicate any dispute under any executory lease or other contract assumed during the Reorganization Cases pursuant to Section 355 of the Bankruptcy Code, and to resolve all matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease of the Debtors;

10.1.5 to resolve controversies and disputes regarding the interpretation of this Plan, including the determination of the priorities of distribution required by Article VII hereof;

10.1.6 to implement the provisions of this Plan and enter orders in aid of confirmation and consummation of this Plan, including without limitation, appropriate orders to enforce the right, title, and powers of the Debtors hereunder;

10.1.7 to determine classification, voting, treatment, allowance, estimation, withdrawal, disallowance or reconsideration of Claims and interests and any objection relating thereto;

10.1.8 to fix, liquidate, or estimate Claims;

10.1.9 to modify the Plan pursuant to Section 1127 of the Bankruptcy Code;

10.1.10 to correct any defect, to cure any mistake or omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary or appropriate to carry out the purposes and intent of this Plan;

10.1.11 to adjudicate any causes of action that arose prior to the Confirmation Date or in connection with the implementation of this Plan, including avoidance actions, brought by the Debtors or the Reorganized Debtors as the representative of the Debtors' estates or party in interest (as a representative of the Debtors' estate);

10.1.12 to resolve disputes concerning any Disputed Claims Reserve or the administration thereof and disputes concerning distributions;

10.1.13 to resolve any disputes concerning whether a person or entity had sufficient notice of the Reorganization Case, the applicable Claims bar date, the hearing on the approval of the Disclosure Statement as containing adequate information, the hearing on the confirmation of this Plan for the purpose of

determining whether a Claim or Interest is discharged hereunder or for any other purpose;

10.1.14 to order the removal, pursuant to Section 1452 of Title 28 of the United States Code, of any suit instituted against the Debtors, the Estate, or the Reorganized Debtors and to hear and determine any action so removed;

10.1.15 to enter such orders as are necessary or appropriate to carry out the provisions of the Plan;

10.1.16 to enter a Final Order closing the Reorganization Case; and

10.1.17 to hear and determine such other matter as may be provided for under Title 28 or any other title of the United States Code and any reference to the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, other applicable law, this Plan or the Confirmation Order.

### ARTICLE XI
### MISCELLANEOUS PROVISIONS

11.1 Governing law.  Except to the extent the Bankruptcy Code, Bankruptcy Rules, or other federal laws apply, the rights and obligations arising under this Plan shall be governed by the laws of the State of Florida, without giving effect to any principles of conflicts of law contained therein.

11.2 Effectuating Documents and Further Transactions.   The Debtors, following the Effective Date, shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan. Specifically, prior to the Effective Date, the Debtors are authorized to execute and deliver such documents, and take such other actions, as

may be required under the Plan.

11.3 <u>Successors and Assigns</u>.  The rights, benefits, and obligations of any person or entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor, or assign of such person or entity.

11.4 <u>Confirmation Order and Plan Control</u>.  To the extent the Confirmation Order and/or this Plan is inconsistent with the Disclosure Statement, any other agreement entered into between the Debtors and any third party concerning the Plan, this Plan controls the Disclosure Statement and any such agreements and the Confirmation Order (and any other orders of the Court) shall be construed together and consistent with the terms of the Plan. In the case of any conflict between the terms of (1) the Plan and construed together therewith, the Confirmation Order and (2) the terms or conditions of any of the loan documents underlying a Secured Claim in respect of which a Reorganization Security is issued under the Plan, which are incorporated therein by reference, such conflict shall be resolved by according relative priority and control to the Confirmation Order and Plan, construed together.


Dated: May 10, 2013.

_ /s/ Francis Seth Griffith_ _____
Francis Seth Griffith